IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: MAIN STREET BUSINESS FUNDING, LLC, | ) Chapter 7 )  |
| Debtor. | ) Case No. 19-10598 (BLS) ) |
| JOHN P. LANE, JR. | ) ) ) |
| Appellant, | ) ) |
| v. | ) ) Civ. No. 22-791 (GBW) |
| DON A. BESKRONE, Chapter 7 Trustee of Main Street Business Funding, LLC, | ) ) ) |
| Appellee. | ) ) |

**MEMORANDUM OPINION**

Ryan M. Ernst, David M. Klauder, BIELLI & KLAUDER, LLC, Wilmington, DE—Counsel to Appellant, John P. Lane, Jr.

Ricardo Palacio, ASHBY & GEDDES, P.A., Wilmington, DE—Counsel to Appellee, Don A. Beskrone, Chapter 7 Trustee of Main Street Business Funding, LLC.

July 10, 2023
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

This matter arises in the chapter 7 case of debtor Main Street Business Funding, LLC (the "Debtor"). Pending before the Court is an appeal by John P. Lane, Jr. (the "Appellant") from the Bankruptcy Court's June 8, 2022 Order (Bankr. D.I. 129)[1] and accompanying opinion, *In re Main Street Business Funding, LLC*, 642 B.R. 141 (Bankr. D. Del. 2022) (the "Opinion"). The Order denied Appellant's motion (APP273-294) (the "Motion") which sought entry of order directing Don A. Beskrone (the "Trustee"), as the chapter 7 trustee appointed in the Debtor's bankruptcy case, to pay over to Appellant settlement proceeds from certain prepetition litigation negotiated by the Trustee for the benefit of the estate and its creditors and approved by the Bankruptcy Court. Appellant asserted that his first priority and properly perfected security interest in certain collateral extended to causes of action in the settled litigation and the settlement proceeds derived therefrom. The Bankruptcy Court denied the Motion, holding that Appellant had failed to comply with the Pennsylvania Uniform Commercial Code's heightened description for a commercial tort claim, and that the terms of the security agreement did not place a lien on any of the Debtor's commercial tort claims. *See In re Main Street Business Funding*, 642 B.R. at 154. For the reasons set forth herein, the Court will affirm the Order.

**I. BACKGROUND**

**A. The Parties and the Security Interest**

Prior to the bankruptcy, Debtor was engaged in the factoring business. Appellant is a creditor and asserts that he has a perfected security interest in certain collateral.

---

[1] The docket of the Chapter 7 case, captioned *In re Main Street Business Funding, LLC*, No. 19-10598 (BLS) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The appendix (D.I. 10) filed in support of Appellant's opening brief is cited herein as "APP__," the appendix (D.I. 12) filed in support of the Trustee's opening brief is cited herein as "TR__."

1

On February 1, 2016, Appellant purchased a Term Promissory Note from Debtor in the amount of $852,500.00 (the "Promissory Note"). (APP277-279). Concurrent with the Promissory Note purchase, Debtor granted Appellant a security interest by executing a Security Agreement on February 1, 2016 (the "Security Agreement"). (APP280-287). The Security Agreement states:

> The term **"Collateral"** means all tangible and intangible personal property of Debtor, wherever located and whether now owned or hereafter acquired, including but not limited to, all accounts, contract rights, general intangibles, chattel paper, machinery, equipment, goods, inventory, fixtures, investment property, letter of credit rights, supporting obligations, books and records, deposit accounts, bank accounts, documents and instruments, together with all proceeds thereof . . . Any term used in the Pennsylvania Uniform Commercial Code (as amended from time to time, the "UCC") and not defined in this Security Agreement shall have the meaning given to the term in the UCC. In addition, the term **"proceeds"** shall have the meaning given to it in the [Pennsylvania] UCC and shall additionally include but not be limited to, whatever is realized upon the use, sale, exchange, license, or other utilization of or any disposition of the Collateral, rights arising out of the Collateral and collections and distributions on the Collateral, whether cash or noncash, and all proceeds of the foregoing.

(APP280) (emphasis in original). Appellant was the first to properly perfect his security interest in Collateral in the State of Delaware on June 21, 2018. (APP289-291).

**B.     Prepetition Litigation, Chapter 7 Filing, and Court-Approved Settlement**

On March 20, 2019 (the "Petition Date"), certain creditors filed a chapter 7 involuntary petition against the Debtor. On May 10, 2019, the Bankruptcy Court entered an order for relief, thereby commencing this chapter 7 proceeding. Appellant filed a timely proof of claim in the amount of $1,287,000.00 in the chapter 7 case. (APP351-379). Appellant alleges that $852,500 of that amount is the secured claim owed to him by the Debtor.

In the course of administering the Debtor's case, the Trustee learned of certain litigation initiated and pursued by the Debtor prior to the Petition Date. In May 2016, the Debtor, together with co-plaintiff Robert Goggin ("Goggin"), the Debtor's President, filed a complaint

commencing an action against various party-defendants, including Michael Goldner, Reger, Rizzo & Darnall LLP ("Reger Rizzo") and Joel S. Luber ("Luber"), captioned *Main Street Business Funding, LLC, et al. v. Goldner, et al.,* and docketed with the Philadelphia Court of Common Pleas (the "Trial Court") as May Term 2016, Case No. 02449 (the "Goldner Litigation").

The Goldner Litigation sought recovery of damages sustained by the Debtor from an alleged scheme implemented by certain defendants, and their attendant breaches of applicable standards of care owed to the Debtor (the "Claims"). In that regard, the operative complaint filed in the Goldner Litigation (the "Goldner Complaint")[2] complains of a "scheme by certain defendants to defraud and steal from Plaintiffs", and notes that, had Goggin "received proper legal advice from the outset," the frauds detailed in the complaint would never have taken place. (*See* APP084). The Complaint asserted damages in the range of $5 to $9 million. (*See* APP108).

Additionally, three other lawsuits involving Main Street were commenced by certain individual creditors: Nancy Cherner,[3] Olivia Kirschner,[4] and Howard Greenberg[5] (together, the "Individual Actions"). All of the Individual Actions asserted similar claims for breach of contract (against Main Street) and, derivatively, fraudulent transfer(s), under and pursuant to the Pennsylvania Uniform Fraudulent Transfer Act (12 Pa. C. S. A. § 5150, *et seq.*), based on transfers made by Main Street to certain named defendants. In addition, Cherner asserted a

---

[2] *See* APP001-31 (original complaint); APP032-82 (amended complaint); APP083-131 (second amended complaint).

[3] *See Cherner v. Main Street Business Funding, LLC, et al.* docketed with the Philadelphia Court of Common Pleas as August Term 2016, Case No. 01661.

[4] *See Kirschner v. Main Street Business Funding, LLC, et al.* and docketed with the Philadelphia Court of Common Pleas as October Term 2016, Case No. 03940.

[5] *See Greenberg v. Main Street Business Funding, LLC, et al.* and docketed with the Philadelphia Court of Common Pleas as November Term 2016, Case No. 01717.

3

direct claim of fraud against Goggin. The Individual Actions were administratively consolidated with the Goldner Litigation. Following multiple settlement conferences before the Trial Court and court-ordered mediation, the parties ultimately achieved settlements of the Goldner Litigation. On October 1, 2021 the Court approved two separate settlement agreements between the Trustee and parties to the Goldner Litigation. (APP235-252). As a result of those settlements, the Trustee received certain funds. By order of the Bankruptcy Court, the amount of the monies received by the Trustee pursuant to the settlements has been sealed. (*See* APP184-185).

### C.     Appellant's Motion

On November 12, 2021, Appellant filed the Motion seeking from the Trustee payment of the proceeds realized from settlement of the Goldner Litigation. Appellant's stated premise for this demand was that "the portion of the funds subject to [Appellant's] perfected security interest are not property of the Debtor's bankruptcy estate and should be dispersed to [Appellant]." (*See* Motion, APP276, ¶ 18). The Trustee opposed the relief sought in the Motion. (*See* APP295-302).

The Security Agreement between the parties dated February 1, 2016, and attached as Exhibit B (APP280-288) to the Motion, provides that Pennsylvania law shall govern. Pennsylvania's Uniform Commercial Code, Division 9, Secured Transactions (the "PUCC") therefore applies and governs the manner in which security interests are created and perfected. *See* 13 Pa.C.S.A. § 9101, *et seq*. To be effective, a security interest must attach to the collateral at issue. *See* 13 Pa.C.S.A. § 9203(a). With limited exceptions not applicable here, a security interest is enforceable against a debtor and third parties regarding the collateral only if: (i) value has been given, (ii) the debtor has rights in the collateral or the power to transfer the rights, and

4

(iii) the debtor has authenticated a security agreement *that provides a description of the collateral.* See 13 Pa.C.S.A. § 9203(b) (emphasis added). It is the final element—the description of the collateral—that is at issue here.

Trustee asserted that the Goldner Litigation met the definition of a "commercial tort claim" as defined by the PUCC:

> Commercial tort claim. A claim arising in tort with respect to which:
>
> (A)  the claimant is an organization; or
> (B)  the claimant is an individual and the claim:
>  (i)  arose in the course of the claimant's business or profession; and
>  (ii) does not include damages arising out of personal injury to or the death of an individual.

(*See* APP299 (quoting 13 Pa.C.S.A. § 9102)). Appellant acknowledged that such litigation involved "sweeping allegations of fraud or theft or otherwise detrimental interference by the defendants of Main Street's cash assets"—causes of action arising in tort. (*See* Motion ¶ 15).

The PUCC provides that a security interest in commercial tort claims cannot be attained simply by generically describing collateral as commercial torts. *See* 13 Pa.C.S.A. § 9108(e)(1) ("A description only by type of collateral defined in this title is an insufficient description of: (1) a commercial tort claim . . . ."). Rather, security interests in commercial tort claims must be specifically identified. *See Polk 33 Lending, LLC v. Schwartz*, 555 F. Supp. 3d 38, 43 (D. Del. 2021); *see also, In re JMF CAB, Inc.*, 614 B.R. 648, 650-52 (Bankr. D. Mass. 2020) (finding that bank did not identify certain commercial tort claims with sufficient specificity to obtain security interest). It appears undisputed that neither the Security Agreement nor the filed UCC-1 mentions the term "commercial tort claim" or includes any description of the Goldner Litigation or anything that would suggest the existence of facts giving rise to the Goldner Litigation. (*See* APP280-291).

5

The Motion asserted that, in return for his loan of $852,500 to the Debtor, the Debtor granted Appellant a security interest in substantially all of its assets. (*See* APP274). At oral argument, Appellant asserted that the Claims articulated in the Goldner Litigation were not commercial tort claims, but sounded in breach of contract, and were therefore covered by Appellant's lien on all of the Debtor's contracts. (*See* APP310). And to the extent that the Bankruptcy Court determined that the Goldner Litigation asserted a commercial tort claim, Appellant asserted that his lien on the Goldner Litigation settlement proceeds arose from the provisions of the Security Agreement giving him a security interest in "all tangible and intangible personal property of the Debtor ... whether now owned or hereafter acquired." (*See* APP274; APP315-318).

The Bankruptcy Court was therefore faced with determining two issues: (1) whether the Goldner Litigation was a breach of contract action (which Appellant argued was subject to his lien on contracts) or a commercial tort claim, and (2) if the Goldner Litigation was a commercial tort claim, then whether the collateral description in the security agreement was specific enough to include proceeds of the Goldner Litigation. With respect to the first issue—whether the Goldner Litigation was a breach of contract action or a commercial tort claim—the Bankruptcy Court applied the "gist of the action" doctrine and ultimately determined that the Goldner Complaint asserted claims arising out of fraudulent acts, not out of breach of contract. *See In re Main Street Business Funding, LLC,* 642 B.R. at 148-52. With respect to the second issue—whether the collateral description in the security agreement was specific enough to include proceeds of the Goldner Litigation—the Bankruptcy Court noted that (1) security interests in commercial tort claims must be specifically identified or described in the security agreement; (2) in order for a security interest in a commercial tort claim to attach, the claim must be in existence

when the security agreement is authenticated; and (3) proceeds of a commercial tort claim that are not in existence at the time of the encumbrance are excluded from an after-acquired general intangible cause. *See id.* at 153. Having not met the above criteria, the Bankruptcy Court determined that Appellant "failed to comply with the UCC's heightened description for commercial tort claim," and that the "reference in [Appellant]'s security agreement 'to all tangible and intangible personal property of the Debtor, ... whether now owned or hereafter acquired' did not place a lien upon any of the Debtor's commercial tort claims, including the Goldner Litigation." *Id.* at 154.

Accordingly, pursuant to the Opinion and Order issued June 8, 2022, the Bankruptcy Court denied Appellant's Motion.

**D.     The Appeal**

On June 15, 2022, Appellant filed his Notice of Appeal from the Order. (D.I. 1). The appeal is fully briefed. (D.I. 9, 11, 13). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

**II.     JURISDICTION AND STANDARD OF REVIEW**

The Order is final, and the Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court

must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992). "Whether the gist of the action [doctrine] applies in any particular setting is a question of law." *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 620 (E.D. Pa. 2010).

## III. ANALYSIS

Appellant raises two issues on appeal. "First," Appellant argues, "the Bankruptcy Court held that the 'gist of the action' of the state court litigation was for commercial tort claims, not contract or unjust enrichment claims, and such commercial tort claims were not included in Appellant's security interest. This is incorrect because the insurance company that paid the settlement funds is barred by Pennsylvania law from indemnifying the insureds from intentional torts (such as the commercial tort claims) and, therefore, the settlement proceeds were for the unjust enrichment claims, which are covered by Appellant's security interest." (D.I. 8 at 3). "Second," Appellant asserts, "the Bankruptcy Court held that the settlement funds were not 'proceeds' of Appellant's collateral. This is also incorrect as the settlement funds were 'proceeds' of the original collateral because the funds were a recovery of Appellant's funds lent to the Debtor, and deposited in Debtor's bank account, which is properly defined as 'collateral' in the security agreement." (*Id.*)

### A. The Goldner Litigation Is a "Commercial Tort Claim"

In determining whether the Goldner Litigation was a breach of contract action or a commercial tort claim, the Bankruptcy Court applied the "gist of the action" doctrine. "Pennsylvania courts have recognized that the gist of the action doctrine 'is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims.'" *In re Main Street*

8

*Business Funding, LLC,* 642 B.R. at 148 (quoting *Cola,* 745 F. Supp. 2d at 619) (alterations in original). "The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other." *Cola,* 745 F. Supp. 2d at 619 (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.,* 811 A.2d 10, 14 (Pa. Super. 2002)). "The doctrine, however, forecloses a party's pursuit of a tort action for the mere breach of contractual duties, 'without any separate or independent event giving rise to the tort.'" *Cola,* 745 F. Supp. 2d at 619 (quoting *Smith v. Lincoln Benefit Life Co.,* 2009 WL 789900, at *20 (W.D. Pa. Mar. 23, 2009) (citations omitted)). The doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*In re Main Street Business Funding, LLC,* 642 B.R. at 148 (quoting *Cola,* 745 F. Supp. 2d at 619-20). "The difference between a cause of action for tort and breach of contracts is that '[t]ort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreement between particular individuals.'" *Id.* (quoting *Bash v. Bell Tel. Co.,* 601 A.2d 829, 829 (Pa. Super. 1992)).

Based on a careful count-by-count review of the Goldner Complaint, the Bankruptcy Court determined that the Goldner Litigation asserted claims arising out of fraudulent acts, not out of breach of contract, and that litigation was therefore a "commercial tort claim." *See id.* at 147-52. The Bankruptcy Court rejected Appellant's assertion that the Goldner Litigation was contractual in nature:

> [Appellant] places heavy reliance on the fact that there was a consulting agreement between defendants and the Debtor, and, therefore, claims that [the

9

> Goldner Litigation] is a contractual dispute. However, the fact that there was a consultancy agreement is not dispositive here. The Goldner Complaint alleges a total of eleven counts, only two of which – for unjust enrichment – sound in contract. ***The Court considers the Complaint as a whole, and it is apparent that the Goldner Litigation ultimately boils down to a commercial tort claim.***

*Id.* at 148 (emphasis added).

On appeal, Appellant undertakes another count-by-count review of the Goldner Complaint in an effort to show that the complaint's counts involve intentional torts. (D.I. 9 at 7-11). Whether a particular count is intentional or not is of no moment in the "gist of the case" analysis, however, and Appellant cites no case law in support of this argument. Rather, as the Bankruptcy Court noted, the focus is whether a plaintiff is seeking to recast ordinary contract claims into tort claims. *In re Main Street Business Funding, LLC*, 642 B.R. at 148. Here, the Goldner Litigation is at its core an action seeking redress for tortious conduct.

For example, the Goldner Complaint asserts two counts of fraudulent misrepresentation (Counts 1 and V), alleging that defendants "knowingly and intentionally participated in the fraudulent scheme to effectuate and/or cover up the unlawful and illicit transfer by which [defendants] secretly embezzled money from [p]laintiffs to or for their own benefit for the purpose of taking unlawful ownership of said assets to be used for their own benefit." (Goldner Complaint, ¶¶ 87, 117). "Plaintiffs relied on [defendants'] misrepresentation in agreeing to loan $150,000 to Goldner" and "disburse millions of dollars to Goldner ..." (*Id.* ¶¶ 91, 121). As the Bankruptcy Court correctly determined, these claims arise from alleged fraudulent acts and not out of a breach of contractual duties. The Goldner Complaint further asserts two counts of conversion (Counts II and VI), alleging that several of the defendants took out an unauthorized par loan and transferred those funds for the benefit of certain defendants (*id.* at ¶¶ 99, 127); that by causing the Debtor to repay the loan with interest, the defendants deprived the plaintiffs' right

in, or use of the property (*id.* at ¶ 100); and that the transfers were made without consent ad without lawful justification (*id.* ¶ 101-102, 128-129). As the Bankruptcy Court correctly explained, these conversion claims also sound in tort, rather than breach of contract. The Goldner Complaint asserts a count based on civil conspiracy, alleging that several of the defendants "participated at various times in a single conspiracy centering on the embezzlement of funds by some or all of [the defendants'] for [certain defendant's] gain and have actively concealed such embezzlement through false misrepresentations made orally to [p]laintiffs and in writing including the backdating of documents purportedly disclosing [some of the defendants'] illicit actions." (*id.* ¶ 105). The Bankruptcy Court correctly noted that "a civil conspiracy claim cannot be pled without alleging an underlying tort" and that the alleged civil conspiracy claim "therefore sounds in tort." *In re Main Street Business Funding, LLC*, 642 B.R. at 149-150.

In sum, the Court finds no error in the Bankruptcy Court's thorough analysis and its determination that the Goldner Complaint—taken as a whole—overwhelmingly sounds in tort, and is thus a "commercial tort claim."

Appellant argues that the Goldner Litigation can only be a contract-based action because Continental Casualty Company ("Continental"), an insurer funding the settlement, cannot defend an insured for his own intentional torts or criminal acts. "The Complaint in the Goldner Litigation alleges several counts of intentional torts, which would not be covered by Defendants' insurance policy, and two counts of unjust enrichment, which are covered by the insurance policy. Accordingly, only those unjust enrichment claims would give Defendants [] a basis for Continental [] to defend and indemnify them (and, importantly, pay funds pursuant to a settlement agreement)." (D.I. 9 at 8). "The courts of Pennsylvania have refused to require an insurer to defend an insured for his own intentional torts and/or criminal acts." (*Id.* (quoting

11

*Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 865 (Pa. 2004) (quoting *Germantown Ins. Co. v. Martin*, 595 A.2d 1172, 1175 (Pa. Super. 1991)).

As an initial matter, the Trustee argues that Appellant did not raise this argument in the Bankruptcy Court. (D.I. 11 at 14-15 & n.18). Apparently disputing this point, Appellant's reply cites several portions of the oral argument before the Bankruptcy Court. (*See* D.I. 13 at 1-2 (citing APP 313-315)). In oral argument, Appellant cited the Pennsylvania Superior Court's prior separate ruling regarding arbitration of certain counts:

> The Court ordered that an overwhelmingly majority of the counts go forward in arbitration, indicating that they clearly accept the contractual portion of that complaint. They do allow several counts of this eleven-count complaint to not be relegated to arbitration. ... What I'm trying to indicate is the Superior Court did find a contract action because they forced everything into arbitration, except a few claims, that they say could be tortious. But, Your Honor, we're never going to know if they were tortious because this Court intelligently compromised the claims and accepted releases.

(APP313). Having reviewed the Motion and the entire transcript of the oral argument (APP306-332), the Court is not satisfied that Appellant raised an argument that the Goldner Litigation must be viewed as a breach of contract action based on the settlement. Because Appellant did not raise this argument below, it is barred on appeal. *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 372 (3d Cir. 2022) ("An argument is waived where a party fails to 'adequately raise it' with a 'minimum level of thoroughness' in the lower court"). "And in bankruptcy appeals, avoiding a waiver determination at the district court or appellate court requires a party to have properly brought the argument before the bankruptcy court." *Id.* (citing *In re Trib. Media Co.*, 902 F.3d 384, 400 (3d Cir. 2018)).

Even assuming the Court were to consider the merits of this new argument, however, it must fail. Appellant seeks to have the Goldner Litigation characterized as a contract action based not on the merits of all the allegations and claims set forth in the Goldner Complaint, but

rather on the identity of the alleged payor of the settlement consideration. Appellant cites no case law in support of this approach. Moreover, while the principle of Pennsylvania law cited by Appellant is well settled, it does not bear Appellant's application to the Goldner Litigation settlement. To reach the conclusion he advances, Appellant argues: (1) because the Goldner Litigation does not allege any tort claims other than intentional torts, Continental is precluded from paying anything on account thereof; (2) because Continental did pay something, such payment can only be on account of non-tort claims; (3) accordingly, the settlement proceeds must be for the unjust enrichment claims which sound in contract law—*i.e.* the only non-tort claims, Appellant argues, that are alleged in that litigation. The Trustee argues that this is a flawed syllogism, and I agree. Among other things, the compromise reached in bankruptcy need not allocate the settlement funds to particular causes of action.

Appellant further asserts that certain release, non-disparagement, and confidentiality provisions in the underlying settlement agreement are indicative of the contractual nature of the Goldner Litigation. (*See* D.I. 9 at 14). But it is unclear to the Court how such provisions support Appellant's position as they are fairly boilerplate terms in settlements, regardless of the nature of the action. *See e.g., Diamond Game Enterprises v. Howland*, 1999 WL 397743, at *6 (D. Or. Mar. 23, 1999) (noting that "a request for a release is common in practically every settlement agreement"); *Leonard v. Nokel LLC*, 2021 WL 3032523, at *9 (E.D. Mich. July 19, 2021) (noting that subject agreements "contain[ed] mutual non-disparagement clauses, a common provision in civil settlements"); *Johnson v. U.S. Bank Nat'l Ass'n*, 2012 WL 12995323, at *5 (W.D. Wis. Dec. 17, 2012) ("Inserting a confidentiality clause into a settlement agreement is a common practice").

13

The Court finds no error in the Bankruptcy Court's determination that the Goldner Complaint, taken as a whole, overwhelmingly sounds in tort, and is thus a "commercial tort claim." *See In re Main Street Business Funding, LLC,* 642 B.R. at 148.

### B. The Settlement Agreement Funds Are Not "Proceeds" of the Original Collateral

Even if this Court agrees that the Goldner Litigation is a commercial tort claim, Appellant argues, "the Court should still find the Bankruptcy Court erred because the settlement agreement funds are 'proceeds' of the original collateral and Appellant [] had a perfected security interest in those proceeds. (D.I. 9 at 16). In support, Appellant posits generally that proceeds of a commercial tort claim arising out of damage to a creditor's collateral are subject to the creditor's security interest. (*See id.* at 18 (citing and quoting *Bayer CropScience, LLC v. Stearns Bank Nat' Ass'n,* 837 F.3d 911, 916 (8th Cir. 2016)). The Trustee agrees that proceeds realized from collateral, damaged, stolen or otherwise, remains subject to the security interest. But for Appellant to prevail on his argument, Trustee argues, Appellant must show that he actually had an interest in the original collateral.

The Court agrees with the Trustee that Appellant's argument is flawed. The crux of Appellant's argument is that he made an investment (a loan) to the Debtor, with the cash serving as his collateral. Following that investment, Appellant explains, his collateral was stolen such that any monies realized through the Goldner Litigation settlement are proceeds to which his security interest attaches:

> Here, the gravamen of Main Street's tortious allegations is its action against Goldner, Reger Rizzo, and Luber stated clearly and succinctly in ¶ 29 of the complaint, '[s]ometime in the spring or early summer of 2015, Goldner and Luber conspired to secretly divert Plaintiff's money to fund a real estate venture.' In plain language, Main Street claims Goldner and Luber stole the money. Therefore, it stands to reason, if Continental Casualty Company were to pay out to Main Street funds 'diverted' *i.e.,* stolen by Goldner and Luber, those awarded

14

> funds constitute 'proceeds' of the collateral and are therefore covered by the Appellant['s] security interest.

(D.I. 9 at 19).

The fatal flaw in this argument is that the funds alleged to have been stolen in 2015 were not Appellant's collateral, as his security interest did not attach to the funds or any other Main Street asset until 2016. According to Appellant, February 1, 2016 was the date on which he (i) purchased a Term Promissory Note from the Debtor in the amount of $825,000.00, and (ii) executed a Security Agreement with the Debtor pursuant to which he was granted a security interest in certain "Collateral" (as defined in the Security Agreement). (D.I. 9 at 5). Only on that date did Appellant acquire any interest in any property of the Debtor. And, importantly, only property or assets of the Debtor that existed as of February 1, 2016 could have been given to Lane as security. *In re Ferandos*, 402 F.3d 147, 156 (3d Cir. 2005) ("It is hornbook law that the debtor can only grant a security interest in whatever rights he has in the collateral"). By February 1, 2016, however, the funds that Appellant claims served as his "original collateral" had already been transferred/stolen. (APP092-103 at ¶¶ 38-40, 40-44, 55, 67 (detailing transfers)). Appellant cannot lay claim to collateral that the Debtor did not have to give. The funds that Appellant invested were not available until February 2016, and the alleged thefts all occurred before Appellant loaned his funds to the Debtor. As such, the monies loaned by Appellant could not have been the subject of the alleged theft, and thus cannot serve as Appellant's "original collateral".

Appellant argues that the Bankruptcy Court misconstrued Bayer, which "is dispositive of a favorable outcome for Appellant." (D.I. 13 at 6-7). But the Bankruptcy Court properly distinguished the *Bayer* case upon which Appellant relies. "[I]n *Bayer*, the court permitted recovery for a secured creditor where the commercial tort claim at issue involved damage to

15

equipment that was *in fact Bayer's collateral*"). *In re Main Street Business Funding, LLC*, 642 B.R. at 154 n.70 (emphasis added). Unlike Bayer, who had collateral at the time it was damaged, Appellant had no collateral when the alleged theft of funds occurred. Given that reality, the settlement achieved by the Trustee does not yield proceeds to which Appellant can claim entitlement.

## IV.     CONCLUSION

For the reasons set forth herein, the Order is affirmed. An appropriate order follows.